# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| DANIEL SMIGIEL,<br>    *Plaintiff*,<br><br>v.<br><br>COLLEGE OF STATEN ISLAND,<br>through its Board of Trustees;<br>DR. FRANCES MELENDEZ,<br>in her official and individual capacity;<br>and, DR. LAUREN ROGERS-SIRIN,<br>in her official and individual capacity;<br><br>    *Defendants*. | Civil Case No.<br><br>COMPLAINT FOR VIOLATION OF DUE PROCESS UNDER 42 U.S.C. §1983, BREACH OF CONTRACT, NEGLIGENCE, NEGLIGENT HIRING AND SUPERVISION, NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS, AND SLANDER<br><br>JURY TRIAL DEMANDED |

NOW COMES Plaintiff, Daniel Smigiel, by and through his attorneys, The Law Office of Keith Altman, and for his Complaint against Defendants, hereby states the following:

## BACKGROUND

1. This is an action seeking damages for Defendants' violations of Plaintiff Danial Smigiel's rights. Defendants are responsible for Violation of Due Process under 42 U.S.C. §1983, breach of contract, negligence, negligent hiring and supervision, negligent infliction of emotional distress, and slander.

2. Plaintiff Daniel Smigiel has been bullied and harassed by his peers and faculty of Defendant for a substantial amount of time, including receiving lower grades than his peers.

## PARTIES

3. Plaintiff Daniel Smigiel ("Plaintiff") is a student at the CUNY College of Staten Island.

4. Defendant CUNY College of Staten Island ("CSI") is a public senior college within The City University of New York system.

5. Defendant Dr. Frances Melendez ("Melendez") is the Director of the Clinical Mental Health Counseling program at CSI.

6. Defendant Dr. Lauren Rogers-Sirin ("Rogers-Sirin") is an Associate Professor at CSI.

## JURISDICTION & VENUE

7. For all times relevant to this matte, Plaintiff is a resident of the State of New York.

8. Defendant has its headquarters and principal place of business in Staten Island, New York, transacts business in this District, and has subjected itself to this Court's jurisdiction through such activity. Accordingly, venue is proper in this District under 28 U.S.C. §1391.

9. The Court has diversity jurisdiction over this action pursuant to 28 U.S.C. §1332(a)(1) because there is diversity of residence of the named parties. Additionally, this court has subject matter jurisdiction because the amount of controversy exceeds $75,000.

## FACTUAL ALLEGATIONS

10. Plaintiff graduated with a Bachelor of Science degree in Psychology from CSI and went on to the Clinical Mental Health Counseling program at CSI in hopes of eventually pursuing a Doctor of Psychology degree.

11. Plaintiff's situation at CSI turned for the worse when he overheard a young black man threaten to shoot up the school. Plaintiff and his friends took this seriously and reported the student to protect their peers.

12. Ever since then, Plaintiff had been bad-mouthed by students and faculty at CSI and branded as racist. For instance, Defendant Rogers-Sirin has specifically expressed to Plaintiff failing to acknowledge that racial injustice exists may make him unable to collaborate with black Americans.

13. From that point, the bullying escalated. It increased so much, that Plaintiff sought help. Attempting to follow what he felt was the proper hierarchy of conflict resolution, Plaintiff asked his advisor, Dr. Hunt, to bring this escalating problem to Defendant Melendez's attention.

14. Defendant Melendez promised Plaintiff that the situation would be handled, but nothing happened. Instead, Plaintiff continued to feel unwelcome in the CSI program.

15. Defendant Melendez failed to create a safe environment for Plaintiff. Plaintiff's peers, and shockingly even members of the CSI faculty including Defendant Melendez, started going through Plaintiff's profiles on social media. Doing so was an incredible intrusion in Plaintiff's privacy. It seems that the intent was to find material to kick Plaintiff out of the CSI program.

16. During the Fall Semester of 2020, in a Zoom class of Defendant Rogers-Sirin, there was an occasion when Plaintiff forgot that he had camera turned on and laughed at something in his room while one of his peers was talking.

17. Plaintiff immediately and profusely apologized to his peer and Rogers-Sirin, who denied any memory of this incident.

18. Despite Plaintiff's efforts to apologize and move forward from the incident, it was brought up again in a different class supervised by Defendant Melendez.

19. In this class, Defendant Melendez asked, "Who felt what Dan did was disrespectful?" and "Does anyone have anything to say about what happened?"

20. Plaintiff told Defendant Melendez that I felt uncomfortable.

21. Plaintiff told Defendant Melendez that he was aware that his social media profiles were searched.

22. Plaintiff told Defendant Melendez that the treatment that he was receiving was unacceptable, and that he did not approve of such treatment.

23. Plaintiff was mortified by Defendant Melendez's behavior. The other students in the class were allowed to attack Plaintiff for over an hour until another student stepped in and told Defendant Melendez that this needed to stop. Simultaneously, Plaintiff faced prejudice and a full-blown smear campaign in Defendant Rogers-Sirin's class. For example, Plaintiff was continuously accused of not having done the reading, despite referencing it in his assignments.

24. When the rumors of racism were first brought to Defendant Melendez' attention, she called Plaintiff. At first Defendant Melendez expressed regret for Plaintiff's experience. Then Defendant was quick to ask Plaintiff questions like "Do you have any racial animus?" and "Why would other students believe you are racially intolerant?" Defendant Melendez further said, "If you have prejudices, its ok, we can work through it. We have helped other students acknowledge and move past their prejudice." This made Plaintiff feel that Defendant Melendez genuinely believed that he held prejudices. This is untrue.

25. Additionally, Defendant Rogers-Sirin took things Plaintiff said in his assignments out of context to paint Plaintiff in a bad light. More specifically, she took twenty (20) points off an assignment for a sentence she had taken out of context and branded racist. Later Defendant Rogers-Sirin admitted to taking

Plaintiff's words out of context and stated she will give the points back. However, the points were only returned after Plaintiff had asked the Chair of the Psychology Department, Dr. Dan McCloskey, for help.

26. Dr. Hunt and Dr. McCloskey both could not find anything concerning in Plaintiff's assignment.

27. Then Defendant Rogers-Sirin accused Plaintiff of "failing to exhibit cultural competence." However, Defendant Rogers-Sirin was unable to objectively define this term nor does the CSI Student Handbook do so.

28. Many times, Plaintiff asked Dr. McCloskey for help with the bullying and harassment. Nothing improved.

29. This led to a meeting attended by Plaintiff, Dr. McCloskey, Dr. Hunt, Defendant Melendez, and Defendant Rogers-Sirin. Defendant Melendez acknowledged that Plaintiff had received unfair treatment. Defendant Rogers-Sirin expressed that, had she known what I had been experiencing, she would not have been so hard on me. Moreover, Defendant acknowledged that Plaintiff was unfairly treated. Defendant provided no apology.

30. At the end of the fall semester, Plaintiff had earned a grade of 95 in Defendant Rogers-Sirin's class which, based on her syllabus, amounts to an "A". Plaintiff only received an "A-".

31. When Plaintiff asked Defendant Rogers-Sirin about why she worsened his grade, she simply stated "participation" although previously she had complimented Plaintiff on his outstanding participation.

32. Plaintiff appealed to the grade appeal committee to no avail. Plaintiff has never been received any explanation about what in his behavior was problematic nor why his behavior led to a lower grade.

33. The grade appeal committee was staffed by Psychology Department faculty, and did not included the defendants. This committee explained that they had "information of an inappropriate situation that took place in class." This was in reference to when Plaintiff laugh during the Zoom call. Since only Defendant Melendez was aware of this situation, it was clear that Defendant Melendez had spoken to the committee even though she was uninvolved. The committee also mentioned Plaintiff's camera and class participation. All allegations were false.

34. Plaintiff was asked about absences and whether his camera was turned on in class.

35. Plaintiff had had only two absences, for which he provided medical notes.

36. While Plaintiff's camera was always on during class, this question was highly inappropriate. According to CSI policy, it is unacceptable to punish a student for having their camera turned off.

37. In January of 2021, Plaintiff began an internship needed to complete the CSI program.

38. Plaintiff's on-site supervisor, who was a previous student of Defendant Melendez, told Plaintiff that Defendant Melendez had requested this supervisor to inform her of all Plaintiff's "mistakes." This supervisor never tried to first resolve any issue involving Plaintiff. Instead, the supervisor went straight to Defendant Melendez.

39. This is indicative of Defendant Melendez trying to build a case against Plaintiff on why he did not belong in the CSI program.

40. As a result of this unfair and inappropriate treatment, Plaintiff dreaded going to the internship. It was clear that Defendant Melendez was keeping watch of Plaintiff and that the supervisor was acting on Defendant Melendez' behalf.

41. Plaintiff has been severely emotionally injured by the harassment and bullying experienced at the hands of CSI faculty during his time at CSI.

## RESPONDAET SUPERIOR AND AGENCY

42. Plaintiff incorporates by reference every preceding allegation as if specifically set forth herein.

43. Under Federal and New York law, an employer may be vicariously liable for an employee's actions when they are acting within the scope of their employment on behalf of the employer.

44. At all times relevant to this action, Defendant Melendez and Defendant Rogers-Sirin were employed by CSI. Some of their acts and omissions relevant to this action were undertaken within the scope of their employment with CSI and approved and ratified by the CSI Board of Trustees.

45. At the time of this Complaint, only the Individual Defendants themselves are aware of the exact role that each Individual Defendant played in the events that are the subject of the lawsuit. For this reason, only the Individual Defendants know at which times each Defendant acted in a manner that exceeded the scope of their duties in their official capacities and at which each Defendant acted in a manner that was within the scope of their duties in their official capacities.

46. At all times relevant to this action, all other named individuals were employed by CSI. Their acts and omissions relevant to this action were undertaken within the scope of their employment with CSI.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### VIOLATION OF DUE PROCESS UNDER 42 U.S.C. §1983
### (As to All Defendants)

47. Plaintiff incorporates by reference every preceding allegation as if specifically set forth herein.

48. Plaintiff had a constitutionally protected interest in continuing his education at CUNY College of Staten Island.

45. Defendants deprived Plaintiff of his constitutionally protected interests when they denied him any sort of fact-finding or hearing on the part of Defendants. Plaintiff was not allowed to challenge the allegations against him. Therefore, Defendants deprived Plaintiff deprived his constitutionally protected interests without any due process.

46. As a result of Defendant CSI's dismissal of due process, Plaintiff suffered severe emotional harm.

## SECOND CAUSE OF ACTION
### Breach of Contract
### (Against Defendant CSI)

47. Plaintiff incorporates by reference every preceding allegation as if specifically set forth herein.

48. Plaintiff and Defendant CSI entered a contract by which Defendant CSI offered admission to Plaintiff on specified terms.

49. Plaintiff accepted Defendant CSI's offer and attended CSI pursuant to the terms of the agreement between the parties.

50. There was a mutual exchange of consideration between Plaintiff and Defendant CSI by which Plaintiff attended the college, involving payments and expenditure

of time, and Defendant CSI providing services made available to Plaintiff, including educational opportunities.

51. Part of the contract included the existence of policies set forth by Defendant CSI. Within these policies was language specific to the use of cameras during Zoom classes.

52. According to this policy language, a student cannot be punished if a camera is turned off during a class.

53. In Plaintiff's case, after being falsely accused of having his camera turned off during classes, was penalized with a lower grade than his score would otherwise been.

54. Defendant CSI violated its obligations under its own handbook policies.

55. As a result of Defendant CSI's breach of contract, Plaintiff suffered severe emotional harm.

### THIRD CAUSE OF ACTION
### Negligence
### (Against All Defendants)

56. Plaintiff incorporates by reference every preceding allegation as if specifically set forth herein.

57. While Plaintiff was attending CSI, Defendant CSI owed Plaintiff a duty of care.

58. As a college, Defendants owed a duty to Plaintiff to see that he would be educated in a safe manner free from any bullying and harassment.

59. Defendants breached its duty in many ways including but not limited to, failing to protect Plaintiff from being bullied and harassed. Despite Defendant being aware of the situation, Defendants did nothing to protect Plaintiff.

60. As a direct result of Defendants' negligence, Plaintiff suffered severe emotional harm and had to undergo therapy.

61. It was foreseeable to Defendants that, by not protecting Plaintiff from abuse, as they were required to do, Plaintiff would suffer harm.

## FOURTH CAUSE OF ACTION
### Negligent Hiring and Supervision
### (Against Defendant CSI)

62. Plaintiff incorporates by reference every preceding allegation as if fully stated herein.

63. Defendant CSI had a special duty of investigation Defendant Melendez and Defendant Rogers-Sirin prior to their employment since their employment could led to a risk of harm to others.

64. Defendant CSI conducted its business of educating students through its employees or other agents.

65. Defendant CSI failed to take the care that a prudent person would take in selecting college instructors, as evidenced by outrageous conduct of its faculty, Defendant Melendez and Defendant Rogers-Sirin.

66. Defendant CSI knew or, in the exercise of ordinary care, should have known of the necessity for exercising control over Defendant Melendez and Defendant Rogers-Sirin.

67. A college instructor's job places them in a position of power over potentially vulnerable students. There is always a risk that an instructor will abuse his power and act inappropriately towards a vulnerable student.

68. Defendant CSI had a duty to supervise Defendant Melendez and Defendant Rogers-Sirin to ensure they did not bully and harass students.

69. Defendant CSI breached this duty by failing to conduct an adequate pre-employment investigation of Defendant Melendez and Defendant Rogers-Sirin.

70. Plaintiff suffered harm as the proximate result of Defendant CSI's negligent hiring and supervision of Defendant Melendez and Defendant Rogers-Sirin.

### FIFTH CAUSE OF ACTION
### Negligent Infliction of Emotional Distress
### (Against all Defendants)

71. Plaintiff incorporates by reference every preceding allegation as if specifically set forth herein.

72. When Plaintiff was attending CSI, Defendant owed Plaintiff a duty of care.

73. As a college, Defendants owed a duty to Plaintiff to see that he was educated in a safe manner free of bullying and harassment.

74. Defendants knew, or should have known, that their failure to prevent bullying and harassment of Plaintiff would result in Plaintiff's serious emotional distress.

75. Defendants' conduct was extreme and outrageous. The frequency with which the bullying occurred, and the fact that Defendants did nothing to help Plaintiff, went beyond all bounds of decency.

76. Defendants' actions proximately caused Plaintiff's emotional injury, including severe emotional anguish.

### SIXTH CAUSE OF ACTION
### Slander
### (Against Defendants Dr. Melendez and Dr. Rogers-Sirin)

77. Plaintiff incorporates by reference every preceding allegation as if specifically set forth herein.

78. Defendant Melendez and Defendant Rogers-Sirin made false public allegations to others that Plaintiff was racist.

79. Both Defendant Melendez and Defendant Rogers-Sirin were aware of the defamatory nature and the falsehood of the statement.

80. The statement clearly identified Plaintiff.

81. Plaintiff has suffered severe emotional distress at the fault of Defendant Melendez and Defendant Rogers-Sirin.

82. The allegations were not protected by privilege.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that this Court grant him relief as follows:

(1) Compensatory damages for financial loss, damage to reputation, humiliation, mental anguish, and emotional distress;

(2) Punitive damages against the Defendants;

(3) Attorneys' fees;

(4) Costs of the suit; and,

(5) Such other relief as the Court may deem proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury on all issues stated in this action.

Date: November 11, 2021

Respectfully Submitted,

/s/ Keith Altman
Keith Altman (pending *pro hac vice*)
The Law Office of Keith Altman
33228 West 12 Mile Road - Suite 375
Farmington Hills, Michigan 48331
Telephone: (516) 456-5885
keithaltman@kaltmanlaw.com