UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------X
DANIEL SMIGIEL,                                     :
                                                    :
                        Plaintiff,                  :
                                                    :
            -against-                               :
                                                    :            21-CV-06323 (MKB)(RML)
                                                    :
COLLEGE OF STATEN ISLAND,                           :
DR. FRANCES MELENDEZ,                               :
and DR. LAUREN ROGERS-SIRIN                         :
                                                    :
                        Defendants.                 :
                                                    :
-----------------------------------------------------X


**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO
DISMISS THE COMPLAINT**


                              LETITIA JAMES
                              Attorney General of the
                              State of New York
                              <u>Attorney for Defendants</u>
                              28 Liberty Street
                              New York, New York 10005
                              Tel: (212) 416-8249


JANE P. ROSALES
Assistant Attorney General
  <u>Of Counsel</u>

# <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................................................. iii

PRELIMINARY STATEMENT ............................................................................. 1

FACTUAL BACKGROUND .................................................................................. 2

    A.  Parties.................................................................................................... 2

    B.  Allegations ............................................................................................ 2

LEGAL STANDARDS .......................................................................................... 5

    A.  Rule 12(b)(1)......................................................................................... 5

    B.  Rule 12(b)(6)......................................................................................... 5

ARGUMENT .......................................................................................................... 6

    I.    DEFENDANTS ARE ENTITLED TO ELEVENTH AMENDMENT SOVEREIGN IMMUNITY ............................................................................. 6

        A.  CUNY.................................................................................................... 6

        B.  Dr. Melendez and Dr. Rogers-Sirin ..................................................... 7

    II.    THE COMPLAINT FAILS TO STATE A SECTION 1983 CLAIM AGAINST DR. MELENDEZ AND DR. ROGERS-SIRIN ............................................. 7

        A.  Respondeat Superior is Inapplicable in Section 1983 Actions ............ 8

        B.  Plaintiff Does Not Sufficiently Allege a Violation of His Rights Under the Fourteenth Amendment ........................................................................................... 8

    III.    PLAINTIFF'S CLAIMS AGAINST DR. MELENDEZ AND DR. ROGERS-SIRIN ARE BARRED BY QUALIFIED IMMUNITY .................................................... 12

    IV.    PLAINTIFF'S SUPPLEMENTAL STATE LAW CLAIMS SHOULD BE DISMISSED .................................................................................................14

        A.  Negligence ......................................................................................... 15

        B.  Negligent Infliction of Emotional Distress ....................................... 16

        C.  Slander .............................................................................................. 17

        D.  Respondeat Superior and Agency ..................................................... 18

    V.    THE COURT SHOULD DISMISS PLAINTIFF'S CLAIMS AGAINST THE DEFENDANTS WITH PREJUDICE BECAUSE FURTHER AMENDMENT WOULD BE FUTILE ............................................................................................ 18

CONCLUSION..................................................................................................... 19

# TABLE OF AUTHORITIES

**Page(s)**

FEDERAL CASES

*AA by BB v. Hammondsport Central School District*,
    527 F.Supp.3d 501 (W.D.N.Y. 2021) .......................................................................16

*Alexander v. Westbury Union Free School Dist.*,
    829 F. Supp. 2d 89 (E.D.N.Y. 2011) .......................................................................18

*APWU v. Potter*,
    343 F.3d 619 (2d Cir. 2003).......................................................................................5

*Ashcroft v. al-Kidd*,
    563 U.S. 731 (2011)................................................................................................12

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)................................................................................... 5-6, 8, 15

*Bd. of Curators of the Univ. of Missouri v. Horowitz*,
    435 U.S. 78 (1978), and (2) ......................................................................8, 10, 13

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007).................................................................................................6

*Bermudez v. City of N.Y.*,
    783 F. Supp. 2d 560 (S.D.N.Y. 2011).......................................................................8

*Brennan v. City of White Plains*,
    67 F.Supp.2d 362 (S.D.N.Y. 1999) ........................................................................12

*C.T. v. Valley Stream Union Free Sch. Dist.*,
    201 F. Supp. 3d 307 (E.D.N.Y. 2016) ....................................................................16

*Cammarata v. City Univ. of N.Y.*,
    No. 17-CV-6456 MKB, 2019 WL 3859401 (E.D.N.Y. 2019) .................................7

*Chambers v. North Rockland Central School District*,
    815 F.Supp.2d 753 (S.D.N.Y. 2011).......................................................................13

*Chandrapaul v. City of New York*,
    14-civ-790 AMD, CLP, 2016 WL 1611468 (E.D.N.Y. April 20, 2016)................11

*Chinn v. City University of New York School of Law at Queens College*,
    963 F.Supp. 218 (E.D.N.Y. 1997) ..........................................................................15

*Chris H. v. New York*,
    740 F. App'x 740 (2d Cir. 2018) .............................................................................14

*Clissuras v. City Univ. of N.Y.*,
   359 F.3d 79 (2d Cir. 2004) (per curiam).........................................................2, 7

*Cojocaru v. City Univ. of N.Y.*,
   No. 19-CIV- 5428 AKH, 2020 WL 3791669 (S.D.N.Y. July 7, 2020) ...................17

*Cummings v. City of New York*,
   No.19-CV-7723 CM OTW, 2020 WL 882335 (S.D.N.Y. Feb. 2, 2020) ..............17

*Doe #1 v. Syracuse Univ.*,
   468 F. Supp. 3d 489 (N.D.N.Y. 2020)..................................................................17

*Dube v. State Univ. of N.Y.*,
   900 F.2d 587 (2d Cir. 1990)......................................................................................6

*Farid v. Ellen*,
   593 F.3d 233 (2d Cir. 2010).......................................................................................8

*Feng Li v. Rabner*,
   643 F. App'x 57 (2d Cir. 2016) ...............................................................................6

*Ford v. Reynolds*,
   316 F.3d 351 (2d Cir. 2003).......................................................................................7

*Hershey v. Goldstein*,
   938 F. Supp. 2d 491 (S.D.N.Y. 2013).....................................................................15

*Idema v. Wager*,
   120 F. Supp. 2d 361 (S.D.N.Y. 2000).....................................................................17

*Jordan v. Chase Manhattan Bank*,
   91 F. Supp. 3d 491 (S.D.N.Y. 2015).......................................................................18

*Makarova v. United States*,
   201 F.3d 110 (2d Cir. 2000)......................................................................................5

*Marino v. City Univ. of N.Y.*,
   18 F.Supp.3d 320 (E.D.N.Y. 2014) ................................................................6, 9-11

*MLC Fishing Inc. v. Velez*,
   667 F.3d 140 (2d Cir. 2011)......................................................................................5

*Mozzochi v. Borden*,
   959 F.2d 1174 (2d Cir. 1992)....................................................................................8

*Nguyen v. Milliken*,
   15-cv-0587 MKB, 2015 WL 4925884 (E.D.N.Y. Aug. 18, 2015) ........................11

*Pearson v. Callahan*,
    555 U.S. 223 (2009)................................................................................................12

*Pennhurst State Sch. & Hosp. v. Halderman*,
    465 U.S. 89 (1984)..................................................................................................6

*Rapaport v. Barstool Sports, Inc.*,
    No. 18 CIV 8783, 2021 WL 1178240 (S.D.N.Y. Mar. 29, 2021) ........................17

*Ratajack v. Brewster Fire Dep't, Inc. of the Brewster-Se. Joint Fire Dist.*,
    178 F. Supp. 3d 118 (S.D.N.Y. 2016).................................................................18

*Regents of University of Michigan v. Ewing*,
    474 U.S. 214 (1985)...............................................................................................13

*Sutton v. Stony Brook University*,
    18-cv-7434 JS ARL, 2020 WL 6532937 (E.D.N.Y. Nov. 4, 2020) .....................11

*Taravella v. Town of Wolcott*,
    599 F.3d 129 (2d Cir. 2010)..................................................................................12

*Will v. Mich. Dep't of State Police*,
    491 U.S. 58 (1989).................................................................................................7

*Wright v. Smith*,
    21 F.3d 496 (2d Cir. 1994).....................................................................................8

*Young v. County of Fulton*,
    160 F.3d 899 (2d Cir. 1998).................................................................................12

*Zinermon v. Burch*,
    494 U.S. 113 (1990).................................................................................................8

STATE CASES

*Luina v. Katherine Gibbs School New York, Inc.*,
    37 A.D.3d 555 (2nd Dep't 2007).........................................................................15

*Pasquaretto v. Long Island University*,
    106 A.D.3d 794 (2nd Dep't 2013) ................................................................. 15-16

CONSTITUTIONAL PROVISIONS

Eleventh Amendment......................................................................................... 1, 6-7, 15

Fourteenth Amendment ...............................................................................................1, 8

**FEDERAL STATUTES**

28 U.S.C.
    § 1367(c)(3) ..............................................................................................................14

42 U.S.C.
    § 1983.......................................................................................................... passim

**RULES**

Rule 12(b)(1)..................................................................................................1,5, 19

Rule 12(b)(6) ............................................................................................. 1, 5, 18-19

Defendants the College of Staten Island ("CSI")/City University of New York ("CUNY"), Dr. Lauren Rogers-Sirin, and Dr. Frances Melendez (collectively "Defendants") by their attorney, Letitia James, Attorney General for the State of New York respectfully submit this memorandum of law in support of their motion to dismiss the Complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

Plaintiff Daniel Smigiel, a former student at CSI, brings this 42 U.S.C. § 1983 action against Defendants claiming that he is entitled to monetary relief for alleged violations of his Fourteenth Amendment right to due process. The Complaint consists of two main allegations. First, Plaintiff alleges that he was branded as a racist and as a result has been bullied and harassed by his peers and faculty at the College of Staten Island ("CSI"). Complaint (ECF No. 1) ¶¶ 2-3, 12. Second, Plaintiff alleges that Defendants deprived him of procedural due process when Defendants refused to change his grade from an A- to an A.

The Complaint also contains multiple state law claims against Defendants. Plaintiff alleges breach of contract, negligence, negligent hiring and supervision, and negligent infliction of emotional distress against CUNY, as well as negligence and slander against Dr. Melendez and Dr. Rogers-Sirin.

All claims against Defendants should be dismissed. First, CUNY, as an arm of the state, as well as the individual defendants sued in their official capacity, are immune from suit based on their Eleventh Amendment sovereign immunity. Second, the Complaint fails to allege any facts sufficient to state a Fourteenth Amendment due process claim against Dr. Rogers-Sirin and Dr. Melendez in their personal capacities. Third, even if the Court were to find that Plaintiff has successfully plead such a claim, Drs. Rogers-Sirin and Melendez are immune from suit under the

doctrine of qualified immunity. Finally, the Court should decline supplemental jurisdiction over Plaintiff's state law claims as he has failed to state a plausible claim for a violation of his constitutional rights. Regardless, Plaintiff fails to allege sufficient facts to state a claim as to any of his supplemental state law claims.

## **FACTUAL BACKGROUND**

### A. Parties

Plaintiff is a former student CSI student who graduated with a Bachelor of Science degree in Psychology. Compl. ¶ 10. Plaintiff went on to the Clinical Mental Health Counseling program at CSI "in hopes of eventually pursuing a Doctor of Psychology degree."[1] *Id.* Defendant CSI is a senior college within the City University of New York ("CUNY") system.[2] *Id.* ¶ 4. Defendant Dr. Melendez is the Director of the Clinical Mental Health Counseling program at CSI. *Id.* ¶ 5. Defendant Dr. Rogers-Sirin is an Associate Professor at CSI. *Id.* ¶ 6.

### B. Allegations

Plaintiff alleges that he has been bullied and harassed by his peers and faculty since he was branded as a racist when he reported a black student for threatening to shoot up the school. Compl. ¶¶ 11-12. He alleges that the bullying escalated to the point that he asked his advisor, Dr. Hunt to bring this "escalating problem" to Dr. Melendez's attention. *Id.* ¶ 13. Plaintiff claims that Dr. Melendez "promised Plaintiff that the situation would be handled, but nothing happened." *Id.* ¶ 14.

---

[1] At the time the Complaint was filed on November 15, 2021, Plaintiff was still enrolled at CSI. Plaintiff graduated at the end of the Fall 2021 semester (January 15, 2022) with a Master of Arts in Mental Health Counseling.

[2] Plaintiff improperly names CSI as a defendant in this action. CSI, a senior college in the CUNY system, is "not a legally cognizable entity apart from CUNY." *Clissuras v. City Univ. of N.Y.,* 359 F.3d 79, 81 n.2 (2d Cir. 2004) (per curiam). Therefore, CUNY is the sole proper institutional defendant in this action.

Plaintiff further alleges that when the rumors of racism were first brought to Dr. Melendez's attention, she called Plaintiff. Compl. ¶ 24. Plaintiff claims that Dr. Melendez "expressed regret for Plaintiff's experience." *Id.* Plaintiff then alleges that Dr. Melendez asked Plaintiff questions like "Do you have any racial animus?" and "why would other students believe you are racially intolerant?" *Id.* Plaintiff alleges that Dr. Melendez failed to create a safe environment for Plaintiff and alleges that his peers and members of the CSI faculty, including Dr. Melendez, started going through Plaintiff's social media profiles "to find material to kick Plaintiff out of the CSI program." Compl. ¶ 15.

Plaintiff alleges that in the fall of 2020, during Dr. Rogers-Sirin's Zoom class, Plaintiff forgot he had the camera on and laughed at a classmate. *Id.* ¶ 16. Despite his efforts to apologize, Plaintiff claims that this incident was brought up by Dr. Melendez in a different class. *Id.* ¶ 18. He alleges that Dr. Melendez allowed other students to verbally attack Plaintiff for over an hour until another student stepped in. *Id.* ¶ 23.

The Complaint further alleges that Plaintiff faced a "full-blown smear campaign" in Dr. Rogers-Sirin's class. Compl. ¶ 23. Plaintiff alleges that he was accused of not having done the readings. *Id.* Additionally, he claims that Dr. Rogers-Sirin took his assignments out of context and "took twenty (20) points off an assignment for a sentence that she branded racist." *Id.* ¶ 25. Dr. Rogers-Sirin later gave the points back to Plaintiff. *Id.* Plaintiff believes that the points were only returned to him after he asked the Chair of the Psychology Department, Dr. Dan McCloskey, for help. *Id.* Plaintiff alleges that Dr. Hunt and Dr. McCloskey "could not find anything concerning in Plaintiff's assignment." *Id.* ¶ 26. Plaintiff alleges "Defendant Rogers-Sirin accused Plaintiff of 'failing to exhibit cultural competence.'" *Id.* ¶ 27. Plaintiff alleges that Dr. Rogers-Sirin was "unable to objectively define this term nor does the CSI Student Handbook do so." *Id.*

3

Plaintiff claims that he asked Dr. McCloskey for help with the bullying and harassment but "nothing improved." Compl. ¶ 28. The Complaint alleges that "this led to a meeting attended by Plaintiff, Dr. McCloskey, Dr. Hunt, Defendant Melendez and Defendant Rogers-Sirin." *Id.* ¶ 29. Plaintiff claims that during the meeting Dr. Melendez "acknowledged that Plaintiff had received unfair treatment[,]" and Dr. Rogers-Sirin "expressed that, had she known what [he] had been experiencing, she would not have been so hard on [him]." *Id.*

At the end of the semester, Plaintiff earned a grade of 95 in Dr. Rogers-Sirin's class, which, "based on her syllabus, amounts to an A." Compl. ¶ 30. Plaintiff received an A- in Dr. Rogers-Sirin's class. *Id.* Plaintiff alleges that when he asked Dr. Rogers-Sirin about "why she worsened his grade, she simply stated 'participation' although previously she had complimented Plaintiff on his outstanding participation." *Id.* ¶ 31.

Plaintiff appealed to the Psychology Department Grade Committee. Compl. ¶ 32. Plaintiff alleges that "[t]his committee explained that they had 'information of an inappropriate situation that took place in class.'" *Id.* ¶ 33. Plaintiff alleges this was "in reference to when Plaintiff laugh[*sic*] during the Zoom call." *Id.* Plaintiff alleges that "since only Defendant Melendez was aware of this situation, it was clear that Defendant Melendez had spoken to the committee even though she was uninvolved."[3] Plaintiff claims the "committee also mentioned Plaintiff's camera and class participation." The grade committee, which did not include either Dr. Melendez or Dr. Rogers-Sirin, declined to change the grade. *Id.* ¶¶ 32, 33.

Finally, Plaintiff alleges that Dr. Melendez was "trying to build a case against [him] on why he did not belong in the CSI program." Compl. ¶ 39. In January 2021, Plaintiff began an internship necessary to complete the CSI program. *Id.* ¶ 37. The Complaint alleges that Plaintiff's

---

[3] According to the Complaint, the Zoom call incident occurred in Dr. Rogers-Sirin's class.

4

on-site supervisor, who was a previous student of Dr. Melendez, told Plaintiff that Dr. Melendez requested to be informed about all of Plaintiff's mistakes. *Id.* ¶ 38. Plaintiff alleges that this supervisor "never tried to first resolve any issue involving Plaintiff," and "instead, the supervisor went straight to Dr. Melendez." *Id.* Plaintiff claims that as "a result of this unfair and inappropriate treatment, Plaintiff dreaded going to the internship" since "it was clear" that Dr. Melendez "was keeping watch of Plaintiff and that the supervisor was acting on Defendant Melendez's behalf." *Id.* ¶ 40. As a result, Plaintiff alleges that he has been "severely emotionally injured by the harassment and bullying experience at the hands of CSI faculty during his time at CSI." *Id.* ¶ 41.

## LEGAL STANDARDS

### A.  Rule 12(b)(1)

A claim should be dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) if the court lacks statutory or constitutional power to hear it. *See Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). The party asserting subject matter jurisdiction bears the burden of establishing it. *MLC Fishing Inc. v. Velez*, 667 F.3d 140, 141 (2d Cir. 2011). "The court accepts all factual allegations as true, but "jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *APWU v. Potter*, 343 F.3d 619, 623 (2d Cir. 2003).

### B.  Rule 12(b)(6)

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The court engages in a two-part inquiry. First, if the complaint contains no more than legal conclusions, it is not entitled to the assumption of truth, and must be dismissed, since "a

5

plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555; *see Iqbal*, 556 U.S. at 678. A complaint that "tenders 'naked assertion[s]' devoid of 'further factual enhancement'" will not suffice. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

Second, even where there are factual allegations, the complaint must state a claim that is plausible on its face. *Iqbal*, 556 U.S. at 678. "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 570). This rule "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

## ARGUMENT

## I.   DEFENDANTS ARE ENTITLED TO ELEVENTH AMENDMENT SOVEREIGN IMMUNITY

### A.  CUNY

The Eleventh Amendment bars federal court actions against the states, absent their consent or Congressional abrogation of the immunity. "This jurisdictional bar applies regardless of the nature of the relief sought." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *Feng Li v. Rabner,* 643 F. App'x 57 (2d Cir. 2016). New York State has not waived, nor has Congress abrogated, sovereign immunity to allow Section 1983 claims against the State and its officials. *See Dube v. State Univ. of N.Y.*, 900 F.2d 587, 594 (2d Cir. 1990). CSI is a senior college within the CUNY system and as such, senior colleges are considered "arms of the state." *Marino*

*v. City Univ. of N.Y.*, 18 F.Supp.3d 320, 329 (E.D.N.Y. 2014) (*citing Clissuras v. City Univ. of N.Y.*, 359 F.3d 79, 83 (2d Cir. 2004). As a result, any claims brought against CUNY is the equivalent of a suit against the State of New York and must be dismissed for lack of subject matter jurisdiction. *Clissuras,* 359 F.3d at 82.

### B. Dr. Melendez and Dr. Rogers-Sirin

The Complaint names Dr. Melendez and Dr. Rogers-Sirin in both their individual and official capacities. To the extent they are sued in their official capacities, the Court lacks jurisdiction to hear these claims based on Eleventh Amendment sovereign immunity.

"Immunity recognized by the Eleventh Amendment extends beyond the states themselves to state agents and state instrumentalities that are, effectively, arms of the state." *Cammarata v. City Univ. of N.Y.,* No. 17-CV-6456 MKB, 2019 WL 3859401 (E.D.N.Y. 2019) (*citing Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009)). Eleventh Amendment protection extends to CUNY officials in their official capacity. *See Ford v. Reynolds,* 316 F.3d 351, 355-56 (2d Cir. 2003) (holding that suit against CUNY officials was barred by the Eleventh Amendment to the extent it was brought against CUNY officials in their official capacity and was not seeking prospective injunctive relief). Moreover, a state official sued in their official capacity is not a "person" under § 1983. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). As such, all claims against Dr. Melendez and Dr. Rogers-Sirin in their official capacities for monetary damages are barred.[4]

### II. THE COMPLAINT FAILS TO STATE A SECTION 1983 CLAIM AGAINST DR. MELENDEZ AND DR. ROGERS-SIRIN

To state a claim under § 1983, a plaintiff must plausibly allege that "the Individual Defendants were acting under color of state law, and . . . [their] conduct deprived [plaintiff] of a

---

[4] Plaintiff's Complaint does not seek any form of prospective injunctive relief.

constitutional or a federal statutory right." *Bermudez v. City of N.Y.,* 783 F. Supp. 2d 560, 575 (S.D.N.Y. 2011). He must plausibly allege each individual defendant actually engaged in the conduct that is purportedly unconstitutional and that he was actually deprived of his rights. *Mozzochi v. Borden*, 959 F.2d 1174, 1180 (2d Cir. 1992).

### A. Respondeat Superior is Inapplicable in Section 1983 Actions

Plaintiff's claim for relief under a theory of respondeat superior must be dismissed. Compl. ¶¶ 42-46. It is well settled in this Circuit that "'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir.1991)); *accord Farid v. Ellen*, 593 F.3d 233, 249 (2d Cir. 2010). Further, "vicarious liability is inapplicable to . . . § 1983 suits [and] a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Since "[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior," Plaintiff's claim under § 1983, to the extent it is premised on a theory of respondeat superior, must be dismissed. *Iqbal*, 556 U.S. at 676.

### B. Plaintiff Does Not Sufficiently Allege a Violation of His Rights Under the Fourteenth Amendment

Plaintiff alleges that, through their alleged actions, Dr. Rogers-Sirin and Dr. Melendez violated his constitutional rights to procedural due process guaranteed under the Fourteenth Amendment. To state a procedural due process claim, Plaintiff must allege that (1) Dr. Rogers-Sirin or Dr. Melendez deprived him of either a "liberty" or "property" interest, *Bd. of Curators of the Univ. of Missouri v. Horowitz*, 435 U.S. 78, 82 (1978), and (2) the process that he was afforded was "constitutionally [in]adequate," *Zinermon v. Burch*, 494 U.S. 113, 126 (1990).

"There is no question that Plaintiff has a 'liberty' or 'property' interest in [his] dealings with [his] state-run college as New York has recognized 'an implied contract between a public college and its students.'" *See Marino,* 18 F. Supp. 3d at 337 (quoting *Olsson v. Board of Higher Ed.,* 49 N.Y.2d 408, 414 (N.Y. 1980)). "The essence of the implied contract is that an academic institution must act in good faith in its dealings with its students." *Marino,* 18 F. Supp. 3d at 337 (citing *Branum v. Clark*, 927 F.2d 698, 705 (2d Cir. 1991)). "Such an implied contract, recognized under state law, provides the basis for a property interest that would be entitled to constitutional protection." *Id.* However, Plaintiff does not allege that he was dismissed from school or suffered any disciplinary proceedings as a result of Defendants' actions—in fact, he graduated in January of 2022.  Instead, Plaintiff's sole complaint is that Defendants' alleged actions resulted in him receiving an A- in a class he believed he deserved an A. Therefore, regardless of whether the Court were to find that Plaintiff had a constitutionally protected property interest in the grade he received, Plaintiff's procedural due process claim must fail because he has failed to sufficiently allege how Defendants' procedures for challenging his grade were constitutionally inadequate. Compl. ¶¶ 45-46.

Plaintiff claims that Defendants "denied him any sort of fact-finding or hearing" and he "was not allowed to challenge the allegations against him." Compl. ¶ 45.[5] However, according to the Complaint, Plaintiff was provided with an opportunity to challenge the grade he received. Plaintiff alleges that he received an A- in Dr. Rogers-Sirin's class and appealed it to the grade appeal committee. *Id.* ¶ 30. The grade appeal committee was staffed by Psychology Department

---

[5] This is in reference to paragraph 45 on page 10 of the Complaint. The Complaint has two paragraphs which are both numbered 45. *See* Compl. at 9, 10.

faculty and did not include Dr. Rogers-Sirin or Dr. Melendez. *Id.* ¶ 33. Ultimately, the grade appeal committee declined to change his grade. *Id.* ¶ 32.

At its core, Plaintiff's issue with Defendants is an academic dispute. The Supreme Court has warned that academic evaluations of students, along with other aspects of public education, should be left "to the control of state and local authorities" and not to judges. *Bd. of Curators v. Horowitz*, 435 U.S. 78, 89-91 (1978) (quoting *Epperson v. Arkansas*, 393 U.S. 97 (1968)). The Supreme Court has made clear that there is no mandatory set of formal procedures required for challenging academic decisions. *See Horowitz*, 435 U.S. at 89-90 (finding that academic challenges require less formalized procedures than disciplinary determinations). Additionally, "the operations of public schools are committed to the states and local authorities, and particular care and restraint is required for judicial interposition." *Marino,* 18 F. Supp. 3d at 337 citing *Horowitz,* 435 U.S. at 90 (internal quotations omitted).

In a similar case, *Marino v. CUNY*, the plaintiff alleged that she was denied due process when a grade appeal committee declined to change her failing grade. *Marino,* 18 F. Supp. 3d 320, 323. The plaintiff alleged that as a result of her failing grade, she lost her scholarship and was prevented from obtaining her master's degree. *Id.* at 327. In *Marino*, the grade committee offered plaintiff the opportunity to repeat the seminar. *Id.* The court in *Marino* found that the procedures offered by CUNY "cannot be characterized as constitutionally inadequate" because plaintiff was "given a full and fair opportunity to be heard before impartial adjudicators." *See Marino* at 337-38. The court held that "[p]laintiff was provided with more procedural safeguards than required by the Constitution during the academic appeal of her seminar grade and has therefore failed to state a claim for a violation of her procedural Due Process rights." *Id.* (internal citations omitted).

10

The same reasoning applies here. Plaintiff merely alleges that he was "not allowed to challenge the allegations against him." Compl. ¶ 45, p. 10. However, as plead in the Complaint, Plaintiff was able to appeal his grade to the grade appeal committee—a panel of impartial adjudicators that did not include Drs. Melendez or Rogers-Sirin. Compl. ¶ 33. As Plaintiff alleges in his own Complaint, the committee explained that they "had information of an inappropriate situation that took place in class" and the committee asked about absences and whether his camera was on during class. *Id.* Although Plaintiff did not receive the A that he desired, it is clear that he was afforded sufficient due process under the law to challenge the grade he received. *See Marino* at 337-38; *Sutton v. Stony Brook University*, 18-cv-7434 JS ARL, 2020 WL 6532937 at, \*17 (E.D.N.Y. Nov. 4, 2020) (plaintiff failed to state a procedural due process claim when she failed to allege that the university offered "constitutionally inadequate procedures" in her academic dismissal) (internal quotations omitted); *Chandrapaul v. City of New York*, 14-civ-790 AMD, CLP, 2016 WL 1611468 at \*24 (E.D.N.Y. April 20, 2016) ("plaintiff raised an academic, rather than a disciplinary, dispute and "[a]s such, there is no mandatory set of formal procedures required for challenging" plaintiff's dismissal from nursing program) (citations omitted); *Nguyen v. Milliken*, 15-cv-0587 MKB, 2015 WL 4925884, at \*5 (E.D.N.Y. Aug. 18, 2015) (plaintiff did not allege whether she used the school's grade appeals procedures and failed to show how the "receipt of a grade other than A-minus deprived her of constitutional rights or a constitutionally protected property interest") (internal quotations omitted). Accordingly, Plaintiff's due process claim must be dismissed.

## III.    PLAINTIFF'S CLAIMS AGAINST DR. MELENDEZ AND DR. ROGERS-SIRIN ARE BARRED BY QUALIFIED IMMUNITY

Even if the Court were to find that Plaintiff has sufficiently pled a Section 1983 claim against Dr. Melendez and Dr. Rogers-Sirin in their individual capacities, such a claim would still be barred by the doctrine of qualified immunity. State officials performing discretionary functions are shielded from liability for civil damages if their conduct either "did not violate clearly established rights of which a reason person would have known," or it was objectively reasonable to believe that their acts did not violate those clearly established rights." *Brennan v. City of White Plains*, 67 F.Supp.2d 362, 375 (S.D.N.Y. 1999); *see also Young v. County of Fulton*, 160 F.3d 899, 903 (2d Cir. 1998) (internal citations omitted). Qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments about open legal questions." *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011). To be clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate" at the time of the challenged conduct. *Id.* at 741. Because qualified immunity is designed to relieve government officials of the burdens of litigation, including discovery and trial, it is appropriate for a court to resolve claims subject to the defense as early in the proceedings as possible. *See Pearson v. Callahan*, 555 U.S. 223 (2009).

Furthermore, "[e]ven where the law is clearly established and the scope of an official's permissible conduct is clearly defined, the qualified immunity defense also protects an official if it was objectively reasonable for him at the time of the challenged action to believe his acts were lawful. *Taravella v. Town of Wolcott*, 599 F.3d 129, 134 (2d Cir. 2010) (internal quotations omitted). Even if the claims here were otherwise viable, each defendant was objectively reasonable in believing that their actions were lawful at the time of the alleged violations.

Through their alleged actions, Drs. Rogers-Sirin and Dr. Melendez did not violate any clearly established law. "In determining if a right is clearly established, the Court looks to whether (1) it was defined with reasonable clarity, (2) the Supreme Court or the Second Circuit has confirmed the existence of the right, and (3) a reasonable defendant would have understood that his conduct was unlawful." *Chambers v. North Rockland Central School District*, 815 F.Supp.2d 753, 773 (S.D.N.Y. 2011) (court held that qualified immunity applied because there was no law in the Second Circuit confirming that school officials violated substantive due process by failing to protect a student in their care). Neither the Supreme Court nor the Second Circuit have confirmed a right that a student is entitled to the grade they desire. As discussed previously, this is an academic dispute, and the Supreme Court has established that courts should not interfere in academic disputes. *See supra*, Part II; *Horowitz*, 435 U.S. at 90, 98 ("We decline to further enlarge the judicial presence in the academic community and thereby risk deterioration of many beneficial aspects of the faculty-student relationship."); *Regents of University of Michigan v. Ewing*, 474 U.S. 214, 225 (1985) ("When judges are asked to review the substance of a genuinely academic decision . . . they should show great respect for the faculty's professional judgment.") (internal quotations omitted).

Moreover, a reasonable defendant in Drs. Rogers-Sirin or Melendez's positions would not have understood that their conduct was unlawful. With regard to Dr. Rogers-Sirin, a reasonable university professor could have believed that refusing to change a grade from an A- to an A would not result in a violation of a student's constitutional rights. As discussed, Plaintiff went to the grade appeal committee, which did not include Dr. Rogers-Sirin, and the committee chose not to change the grade. *See supra,* Part II.

13

As to Dr. Melendez, a reasonable university professor could have believed that actions consistent with those taken by Dr. Melendez would not violate Plaintiff's constitutional rights. When Plaintiff laughed at a student in Dr. Rogers-Sirin's class, a reasonable university professor would not believe it was unlawful to bring up the incident in their own class by asking "[w]ho felt what Dan did was disrespectful?" Compl. ¶¶ 16-19. Similarly, it would be reasonable for a professor, after being told by a student that they were being targeted for being a racist, to believe it was lawful to ask the student questions like "[d]o you have any racial animus?" or "[w]hy would other students believe you are racially intolerant?" Compl. ¶ 24. Moreover, Dr. Melendez's alleged actions did not affect Plaintiff's education or matriculation in any way, as Plaintiff was not disciplined for any incident and ultimately graduated with a master's degree in January of 2022.

Accordingly, Defendants are entitled to qualified immunity because their alleged actions did not violate Plaintiff's clearly established constitutional rights.

## IV.    PLAINTIFF'S SUPPLEMENTAL STATE LAW CLAIMS SHOULD BE DISMISSED

Plaintiff brings various state law claims against Defendants. Specifically, Plaintiff alleges that (1) CUNY "breached its obligations under its own handbook policies"; (2) CUNY, Dr. Melendez, and Dr. Rogers-Sirin were negligent in their duty to protect Plaintiff from harassment; (3) CUNY is liable for negligent hiring and supervision; (4) CUNY, Dr. Melendez and Dr. Rogers-Sirin are liable for negligent infliction of emotional distress; and (5) Dr. Melendez and Dr. Rogers-Sirin are liable for slander. Compl. ¶¶ 47-82.

Because Plaintiff has failed to state a plausible claim for a violation of his constitutional rights, Plaintiff's supplemental state law claims should also be dismissed. A district court may "decline to exercise supplemental jurisdiction" if it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). *See Chris H. v. New York*, 740 F. App'x 740, 742

(2d Cir. 2018) (affirming dismissal of state law claims where federal claims were dismissed on basis of sovereign immunity and judicial immunity). However, regardless of whether the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims, these claims also suffer from significant pleading deficiencies and should therefore be dismissed.

As previously discussed, Plaintiff's claims against CUNY and the individual defendants in their official capacities must be dismissed on the basis of Eleventh Amendment immunity. *See supra,* Part I; *Chinn v. City University of New York School of Law at Queens College*, 963 F.Supp. 218, 226 (E.D.N.Y. 1997) ("Pendent jurisdiction does not allow a plaintiff to evade the Eleventh Amendment's proscription against suing states or their agencies in federal court.*"*).

The remaining state law claims against Dr. Melendez and Dr. Rogers-Sirin in their personal capacities must be dismissed for failure to allege the necessary elements of each pled state law claim. *See Iqbal*, 556 U.S. at 677–79 ("A pleading that offers 'a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it 'tenders naked assertions[s]' devoid of 'further factual enhancement.")

## A. Negligence

Plaintiff alleges that Dr. Rogers-Sirin and Dr. Melendez are liable for negligence by "failing to protect Plaintiff from being bullied and harassed." Compl. ¶¶ 56 - 61. "Under New York law, the elements of a negligence claim are: (1) that the defendant owed plaintiff a duty of care; (2) that the defendant breached that duty; and (3) that the defendant's breach was the proximate cause of the plaintiff's injuries." *Hershey v. Goldstein*, 938 F. Supp. 2d 491, 519 (S.D.N.Y. 2013). To the extent the Plaintiff is alleging a theory of negligent supervision of students, Plaintiff has failed to allege a breach of duty by Dr. Rogers-Sirin and Dr. Melendez.

15

"New York has affirmatively rejected the doctrine of *in loco parentis* at the college level." *Pasquaretto v. Long Island University*, 106 A.D.3d 794, 795 (2nd Dep't 2013) (injured plaintiff failed to allege that University defendants owed the plaintiff a duty with respect to a fraternity's initiation process). Colleges "in general have no legal duty to shield their students from the dangerous activity of other students." *Luina v. Katherine Gibbs School New York, Inc.,* 37 A.D.3d 555, 556 (2nd Dep't 2007) (quoting *Eiseman v. State of New York*, 70 N.Y.2d at 190 (1987)). Although *Pasquaretto*, *Luina* and *Eiseman* involve students with physical injuries, the same reasoning should be applied here. As employees of CUNY, Dr. Rogers-Sirin and Dr. Melendez cannot be held liable for any alleged bullying or harassment at the hands of other students because the doctrine of *in loco parentis* does not apply at the college level. *Pasquaretto,* 106 A.D.3d 794, 795. As such, Plaintiff's negligence claim against Dr. Rogers-Sirin and Dr. Melendez should be dismissed.

## B. Negligent Infliction of Emotional Distress

Plaintiff's claim of negligent infliction of emotional distress ("NIED") must be dismissed as duplicative of his negligence claim. Compl. ¶¶ 56-61, 71-76; *see supra*, Part IV.A.1. "A claim for negligent infliction of emotional distress cannot be asserted if it is 'essentially duplicative of tort or contract causes of action." *C.T. v. Valley Stream Union Free Sch. Dist*., 201 F. Supp. 3d 307, 327 (E.D.N.Y. 2016) (where a plaintiff alleged a special duty to be free from harassment by teachers and students which resulted in severe emotional distress under both a negligent supervision and a negligent infliction of emotional distress claim, the court dismissed NIED claim as "duplicative"). In the case at hand, Plaintiff fails to allege separate conduct for both the negligence and negligent infliction of emotional distress claims. *Compare* Compl. ¶¶ 56-61 *to* 71-76. Thus, the claim of negligent infliction of emotional distress is duplicative and should be

dismissed. *See AA by BB v. Hammondsport Central School District,* 527 F.Supp.3d 501, 510 (W.D.N.Y. 2021) (dismissing NIED claim against school district as duplicative of student's negligent supervision claim).

### C. Slander

Plaintiff fails to state a claim for slander against Dr. Melendez and Dr. Rogers-Sirin. "Defamation is the injury to one's reputation either by written expression, which is libel, or by oral expression, which is slander." *Idema v. Wager*, 120 F. Supp. 2d 361, 365 (S.D.N.Y. 2000). "Under New York law, the elements of a defamation claim are a false statement, published without privilege or authorization to a third party, constituting fault and it must either cause special harm or constitute defamation per se." *Cojocaru v. City Univ. of N.Y.*, No. 19-CIV- 5428 AKH, 2020 WL 3791669, at *3 (S.D.N.Y. July 7, 2020) (internal quotation marks and citations omitted). Whether a statement constitutes "fact or opinion is a question of law for the court." *Cummings,* 2020 WL 882335, at *20.[6] "Ultimately, the 'dispositive inquiry is whether a reasonable reader could have concluded that the statements were conveying facts about the plaintiff.'" *Doe #1 v. Syracuse Univ.,* 468 F. Supp. 3d 489, 510-11 (N.D.N.Y. 2020) (quoting *Ratajack*, 178 F. Supp. 3d at 159).

"Courts in New York have consistently held that terms like 'racist' constitute nonactionable opinion." *Cummings v. City of New York*, No.19-CV-7723 CM OTW, 2020 WL 882335, at *20 (S.D.N.Y. Feb. 2, 2020) (holding that statements describing Plaintiff as a racist

---

[6] New York Courts consider three factors in make this determination: (1) whether the specific language in issue has a precise meaning which is readily understood; (2) whether the statements are capable of being proven true or false; and (3) whether either the full context of the communication in which the statement appears or the broader social context and surrounding circumstances are such as to signal readers or listeners that what is being read or heard is likely to be opinion. *Cummings,* 2020 WL 882335, at *20.

were dismissed because they are nonactionable statements of opinion under claims of libel, defamation, and slander); *Rapaport v. Barstool Sports, Inc.,* No. 18 CIV 8783, 2021 WL 1178240 (S.D.N.Y. Mar. 29, 2021) (holding that identifying someone as a racist, among other opinions, is a subjective assessment that is not an actionable statement of fact and thus cannot be seen as defamatory); *Ratajack v. Brewster Fire Dep't, Inc. of the Brewster-Se. Joint Fire Dist.*, 178 F. Supp. 3d 118, 165 (S.D.N.Y. 2016) (holding that claims of Plaintiff being a racist is a nonactionable opinion). Accordingly, Plaintiff's claim that his teachers publicly called him a racist is not actionable as a slander claim

### D. Respondeat Superior and Agency

Plaintiff alleges a claim for relief under the doctrine of respondeat superior. Compl. ¶¶ 42-46. However, there is no claim for relief under New York's common law. *Alexander v. Westbury Union Free School Dist.*, 829 F. Supp. 2d 89, 112 (E.D.N.Y. 2011) (holding "[r]espondeat superior is not an independent cause of action, but a theory that must attach to an underlying claim . . . [and] to the extent that 'respondeat superior' is set forth as an independent cause of action, it is dismissed."). To the extent that "respondeat superior" is set forth as an independent cause of action, it must be dismissed.

### V.   THE COURT SHOULD DISMISS PLAINTIFF'S CLAIMS AGAINST THE DEFENDANTS WITH PREJUDICE BECAUSE FURTHER AMENDMENT WOULD BE FUTILE

If the Court grants Defendants' motion to dismiss, it should not allow Plaintiff the opportunity to file an amended complaint re-pleading his claims against them. Where "the problems with a claim are 'substantive' rather than the result of an 'inadequately or inartfully pleaded' complaint, an opportunity to replead would be 'futile' and 'should be denied.'" *Jordan v. Chase Manhattan Bank*, 91 F. Supp. 3d 491, 510 (S.D.N.Y. 2015) (quoting *Cuoco v. Moritsugu*,

18

222 F.3d 99, 112 (2d Cir. 2000)). Similarly, "if a revised claim still 'could not withstand a motion to dismiss pursuant to Rule 12(b)(6),'" leave to amend should be denied. *Jordan*, 91 F. Supp. 3d at 510 (quoting *Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir. 2002)).

In light of the foregoing principles and the circumstances alleged in this case, Plaintiff should not be permitted to file an amended complaint re-pleading his claims against the Defendants. Plaintiff has failed to provide any allegations that remotely establish that the Defendants violated his constitutional rights. There is no reason to conclude that Plaintiff would be able to cure the substantive deficiencies in the Complaint if given the opportunity to amend. Therefore, the Defendants respectfully request that Plaintiff's claims be dismissed with prejudice.

<u>CONCLUSION</u>

For the foregoing reasons, Defendants respectfully request that this Court grant their motion to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and Fed. R. Civ. P. 12(b)(6) in its entirety and enter judgment dismissing this action against them, together with such other and further relief as the Court deems just and proper.

Dated: New York, New York
      May 9, 2022

                                        Respectfully submitted,

                                        LETITIA JAMES
                                        Attorney General of the
                                        State of New York
                                        <u>Attorney for Defendants</u>
                                        By:

                                        <u>/s/ Jane P. Rosales</u>
                                        Jane P. Rosales
                                        Assistant Attorney General
                                        28 Liberty Street
                                        New York, NY 10005
                                        (212) 416 - 8249

19