Clerk's Office
Filed Date: 2/21/2023

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x
DANIEL SMIGIEL,

                  Plaintiff,

    -against-

COLLEGE OF STATEN ISLAND, DR.
FRANCES MELENDEZ, and DR. LAUREN
ROGERS-SIRIN,

                  Defendants.
--------------------------------------------------------x

NOT FOR PUBLICATION
**MEMORANDUM & ORDER**
21-cv-6323 (CBA) (RML)

**AMON, United States District Judge:**

Plaintiff Daniel Smigiel brings this action against the College of Staten Island ("CSI") and two individuals in their personal and official capacities: Dr. Frances Melendez and Dr. Lauren Rogers-Sirin (collectively, the "Individual Defendants"). Plaintiff, a former student at CSI, alleges that he was branded as a racist and harassed by CSI faculty and students after reporting another student for making threats against the school. Plaintiff further alleges Rogers-Sirin gave him a worse grade in her class than he had earned—an A- instead of an A—and illegitimately cited issues with his "participation." Plaintiff appealed the grade dispute to an independent committee, which declined to change his grade.

Defendants move to dismiss Plaintiff's Complaint for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), arguing that the City University of New York ("CUNY"), its senior colleges, and its officials are immune from suit under the Eleventh Amendment. Defendants also move to dismiss the Complaint under Rule 12(b)(6) for failure to state a claim. For the reasons that follow, Defendants' motion to dismiss is GRANTED.

## BACKGROUND

### I.  Parties

Plaintiff is a former CSI student who graduated with a B.S. degree in Psychology.  (ECF Docket Entry ("D.E.") # 1 ("Complaint" or "Compl.") ¶ 10.)  Plaintiff then pursued a Master of Arts in Mental Health Counseling at CSI.  (Id.)  CSI is a senior college within the CUNY system. (Id. ¶ 4.)  Melendez is the Director of the Clinical Mental Health Counseling program at CSI, and Rogers-Sirin is an Associate Professor at CSI.  (Id. ¶¶ 5-6.)

### II.  Summary of the Complaint

Plaintiff alleges that while at CSI, he was bullied and harassed by his peers and faculty members after he reported a Black student for "threaten[ing] to shoot up the school."  (Id. ¶¶ 11-12.)  He alleges that he was "branded as racist" and that the bullying escalated to a point that he asked his advisor, Dr. Hunt, to bring the matter to Melendez's attention.  (Id. ¶¶ 12-13.)  Plaintiff alleges that Melendez promised to handle the situation "but nothing happened."  (Id. ¶ 14.) Instead, Plaintiff continued to feel unwelcome, and members of faculty, including Melendez, searched Plaintiff's social media profiles with the "intent . . . to find material to kick Plaintiff out of the CSI program."  (Id. ¶ 15.)  Plaintiff alleges that while Melendez at first expressed regret for Plaintiff's experience after the "rumors of racism" were brought to her attention, she then questioned him about whether he held racial animus or prejudices.  (Id. ¶ 24.)

Plaintiff further alleges that in fall 2020, during Rogers-Sirin's Zoom class, he forgot he had his camera turned on and "laughed at something in his room while one of his peers was talking."  (Id. ¶ 16.)  Despite his efforts to apologize, the incident was allegedly brought up by Melendez in a separate class, where Melendez allowed other students to verbally attack Plaintiff "for over an hour."  (Id. ¶¶ 17-19, 23.)  At the same time, Plaintiff allegedly faced "a full-blown

smear campaign" in Rogers-Sirin's class.  (Id. ¶ 23.)  Rogers-Sirin "took things Plaintiff said in his assignments out of context," branded a sentence he had written as racist, and took twenty points off an assignment.  (Id. ¶ 25.)  Rogers-Sirin later returned the points after Plaintiff asked the Chair of the Psychology Department, Dr. McCloskey, for help, and the Chair and Plaintiff's advisor "could not find anything concerning in Plaintiff's assignment."  (Id. ¶¶ 25-26.)  Rogers-Sirin also allegedly accused Plaintiff of "failing to exhibit cultural competence," but she was "unable to objectively define" the term.  (Id. ¶ 27.)  The grading incident led to a meeting between Plaintiff, Dr. McCloskey, Plaintiff's advisor, Melendez, and Rogers-Sirin.  (Id. ¶ 29.)  At the meeting, Melendez "acknowledged that Plaintiff had received unfair treatment" and Rogers-Sirin "expressed that, had she known what [Plaintiff] had been experiencing, she would not have been so hard on [him]."  (Id.)

At the end of the semester, Plaintiff earned a grade of 95 in Rogers-Sirin's class, which, "based on her syllabus, amounts to an 'A'."  (Id. ¶ 30.)  Plaintiff received an A-.  (Id.)  When Plaintiff questioned Rogers-Sirin, she allegedly cited "participation," although she had previously complimented Plaintiff's participation.  (Id. ¶ 31.)

Plaintiff appealed to the Psychology Department grade appeal committee (the "Committee").  (Id. ¶ 33.)  The Committee explained that they had "information of an inappropriate situation that took place in class," which Plaintiff alleges was a reference to the Zoom incident in Rogers-Sirin's class.  (Id.)  The Committee also mentioned Plaintiff's camera and class participation.  (Id.)  Plaintiff alleges that all allegations made by the Committee were false.  (Id.)  Plaintiff further alleges that his camera was always on during class, but in any event, according to CSI policy, it is inappropriate to punish a student for having their camera turned off.  (Id. ¶ 36.)  Plaintiff was also questioned about his absences, and he had only two absences for

which he provided medical notes.  (Id. ¶¶ 34-35.)  The Committee, which did not include Melendez and Rogers-Sirin, declined to change Plaintiff's grade.  (Id. ¶ 32.)

Finally, Plaintiff alleges that Melendez was "trying to build a case against [him] on why he did not belong in the CSI program."  (Id. ¶ 39.)  In January 2021, Plaintiff began an internship needed to complete the CSI program.  (Id. ¶ 37.)  Plaintiff's supervisor, a former student of Melendez, told Plaintiff that Melendez had requested that this supervisor inform her of Plaintiff's "mistakes."  (Id. ¶ 38.)  As a result, Plaintiff "dreaded going to the internship."  (Id. ¶ 40.)

## STANDARD OF REVIEW

A claim will be dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) if the court lacks the statutory or constitutional power to hear it.  Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000).  "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists."  Id.

Rule 12(b)(6) provides for dismissal of a complaint that "fail[s] to state a claim upon which relief can be granted."  A complaint will be dismissed unless the plaintiff states a claim that is "plausible on its face" by alleging sufficient facts for "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A court must dismiss a claim if the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct."  Id. at 679.  Although courts will not credit "conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action," id. at 678, the court must accept as true all material factual allegations and draw all reasonable inferences in the plaintiff's favor.  Johnson v. Priceline.com, Inc., 711 F.3d 271, 275 (2d Cir. 2013).

## DISCUSSION

### I.    Sovereign Immunity

Plaintiff brings claims against one institutional defendant, CSI, and two individual defendants, Melendez and Rogers-Sirin, in both their individual and official capacities. Defendants move to dismiss pursuant to Rule 12(b)(1) the claims against CSI (and its umbrella organization, CUNY) and the individual defendants in their official capacities.

#### A.  CSI/CUNY

The Eleventh Amendment bars federal court actions against the states, absent their consent or congressional abrogation of such sovereign immunity.  Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100 (1984).  New York has not waived its Eleventh Amendment immunity to suit in federal court, and Congress did not abrogate the states' immunity in enacting Section 1983.  See Bryan v. City Univ. of N.Y., No. 20-cv-1627 (CM), 2020 WL 1434708, at *1 (S.D.N.Y. Mar. 23, 2020).  Such immunity extends "not only to a state, but also to entities considered 'arms of the state.'"  Clissura v. City Univ. of N.Y., 359 F.3d 79, 81 (2d Cir. 2004) (per curiam) (quoting McGinty v. New York, 251 F.3d 84, 95 (2d Cir. 2001)); see also Skalafuris v. City of New York, 444 F. App'x 466, 468 (2d Cir. 2011) (summary order).

Plaintiff names CSI as a defendant, which is a senior college in the CUNY system.  In Clissuras, the Second Circuit held that a CUNY senior college is considered an "arm of the state." 359 F.3d at 83.  Accordingly, Plaintiff's claims "against CUNY are equivalent to suits against the State of New York and are therefore barred by the Eleventh Amendment."  Id.

Plaintiff challenges CUNY's dismissal on the grounds that he "seeks only injunctive relief" against his former institution.  (D.E. # 22 ("Opp'n") at 6.)  As an initial matter, the Complaint does not seek injunctive relief, (see Compl. at 15), and even if it did, such a claim would still be barred.

See Marino v. City Univ. of N.Y., 18 F. Supp. 3d 320, 329 (E.D.N.Y. 2014) (dismissing direct constitutional claims for injunctive relief against CUNY as an "arm[] of the state" under the Eleventh Amendment).

### B. Melendez and Rogers-Sirin (Official Capacities)

To the extent Melendez and Rogers-Sirin are named in their official capacities, this Court similarly lacks jurisdiction to hear those claims.  (D.E. # 21 ("Defs.' Mem.") at 7.)  Eleventh Amendment protection extends to CUNY officials sued in their official capacities.  Ford v. Reynolds, 316 F.3d 351, 355-56 (2d Cir. 2003).  The sole exception is a carve out pursuant to Ex parte Young for suits for prospective injunctive relief.  Id. at 354-55.  Because here, the Individual Defendants were sued in their official capacities for money damages only, those claims are dismissed.[1]  See Wilkinson v. New York, No. 18-cv-4148 (PKC) (LB), 2019 WL 5423573, at *7 (E.D.N.Y. Oct. 22, 2019) ("Plaintiff is also barred under the Eleventh Amendment from seeking monetary relief against the Individual Defendants in their official capacities.").

### II.   Section 1983 Due Process Claim Against the Individual Defendants

Defendants next move to dismiss Plaintiff's constitutional due process claims pursuant to Rule 12(b)(6).  Plaintiff alleges that the Individual Defendants violated his right to due process under the Fourteenth Amendment.  The Complaint does not specify whether Plaintiff's claim is for procedural or substantive due process, so I will address both for the sake of completeness. Under either formulation, Plaintiff fails to state a constitutional due process claim.

---

[1] Rather than opposing Defendants' argument that Plaintiff's official-capacity claims against the Individual Defendants must be dismissed, Plaintiff's opposition argues only that the Eleventh Amendment provides no immunity for state officials sued in their personal capacity.  (See Opp'n 7.)  Accordingly, I could also consider Plaintiff's official-capacity claims abandoned.  See Gorfinkel v. Vayntrub, No. 11-cv-3093 (PKC), 2014 WL 4175914, at *4 (E.D.N.Y. Aug. 20, 2014) (dismissing claims against two defendants because the plaintiff "waived any opposition with respect to [defendants'] argument [for dismissal] by failing to oppose the . . . motion [to dismiss] on that basis").

### A.  Procedural Due Process

To establish a violation of procedural due process, Plaintiff must show both a constitutionally protected liberty or property interest of which he has been deprived, and that the procedures followed by the State were constitutionally insufficient.  Oneida Indian Nation of N.Y. v. Madison County, 665 F.3d 408, 427-28 (2d Cir. 2011).

### 1. Deprivation of Protected Liberty or Property Interest

Plaintiff has not alleged facts suggesting any deprivation of a protected interest.  Students generally have a "legitimate entitlement to a public education as a property interest which is protected by the Due Process Clause," Goss v. Lopez, 419 U.S. 565, 574 (1975), but there is no "property interest in any particular type of education program," Donohue v. Hochul, No. 21-cv-8463 (JPO), 2022 WL 673636, at *9 (S.D.N.Y. Mar. 7, 2022) (quoting Bryant v. N.Y. State Educ. Dep't, 692 F.3d 202, 218 (2d Cir. 2012)), appeal on other grounds filed, (2d Cir. 2022).  Rather, the protected interest is "in not being 'excluded from the entire educational process.'"  Id. (quoting Mazevski v. Horseheads Cent. Sch. Dist., 950 F. Supp. 69, 72 (W.D.N.Y. 1997)); see also Puccinelli v. S. Conn. State Univ., No. 21-cv-763, 2022 WL 6770967, at *9 (D. Conn. Oct. 11, 2022) (dismissing procedural due process claim because the student plaintiff "had no property interest in remaining in her specific teaching program").

Plaintiff alleges that he was deprived of his "constitutionally protected interest in continuing his education" at CSI when Defendants "denied [Plaintiff] any sort of fact-finding or hearing," and he "was not allowed to challenge the allegations against him."  (Compl. at 10.[2])  Although Plaintiff refers to "continuing his education," (Id. ¶ 48), and being "precluded from obtaining his education," (Opp'n 11), no allegations in the Complaint refer to any disciplinary

---

[2] Several of the paragraphs in Plaintiff's complaint have repeated numbering (i.e., there are two paragraphs labeled as paragraph 45).  Here, I refer to paragraphs 45 and 48 on page 10 of the Complaint.

proceedings against Plaintiff, dismissals from school, or suggestions that he was deprived of educational opportunities other than the claim that he was not awarded an A grade to which he was entitled.[3]

Plaintiff cites no cases, and I have found none, to support the proposition that receiving a higher grade (or the highest grade to which a plaintiff believes himself entitled) is, standing alone, a protected property interest. Cf. Marino, 18 F. Supp. 3d at 327, 337 (finding property interest where the student plaintiff received a failing grade in one of her courses, which caused her to lose her academic scholarship and deprived her from attaining a Master's degree). Plaintiff also cannot base a procedural due process claim on the Individual Defendants' alleged harassment of him in their classes or the failure to protect Plaintiff from other students' mistreatment. (See, e.g., Compl. ¶¶ 14, 19-20, 23-24, 40-41.) Plaintiff cites no cases suggesting that a student is deprived of due process when he is branded a racist or made to feel uncomfortable in class. To the contrary, courts have rejected procedural due process claims based solely on alleged reputational property interests. See Patterson v. City of Utica, 370 F.3d 322, 329-30 (2d Cir. 2004) ("A person's interest in his or her good reputation alone, apart from a more tangible interest, is not a liberty or property interest sufficient to invoke the procedural protections of the Due Process Clause or create a cause of action under § 1983."). For similar reasons, Plaintiff also cannot raise a "stigma plus" claim as a cognizable liberty interest. A § 1983 "stigma plus" claim "requires a plaintiff to allege (1) the utterance of a statement about her that is injurious to her reputation, that is capable of being proved false, and that he or she claims is false, and (2) some tangible and material state-imposed burden . . . in addition to the stigmatizing statement." Velez v. Levy, 401 F.3d 75, 87 (2d Cir.

---

[3] To the contrary, Defendants assert that Plaintiff graduated from his program in January 2022. (Defs.' Mem. 1.) This fact is outside the pleadings, however, and I do not consider it on a 12(b)(6) motion to dismiss. Nakahata v. N.Y.–Presbyterian Healthcare Sys., Inc., 723 F.3d 192, 202 (2d Cir. 2013) ("We do not consider matters outside the pleadings in deciding a motion to dismiss for failure to state a claim.").

2005) (citation and quotation marks omitted).  Even if Plaintiff had alleged an actionable statement, "[a] free-standing defamatory statement . . . is not a constitutional deprivation," and "the 'plus' imposed by the defendant must be a specific and adverse action clearly restricting the plaintiff's liberty—for example, the loss of employment." Id. at 87-88 (citation omitted).  Here, Plaintiff alleges no cognizable "plus" because he does not allege that he was ever suspended, expelled, or otherwise excluded from obtaining his education.  Accordingly, Plaintiff has not stated a cognizable liberty or property interest.

### 2. Constitutionally Inadequate Procedures

Even if Plaintiff had alleged a viable protected interest of which he had been deprived, he does not allege facts sufficient to show "constitutionally [in]adequate" process.  Marino, 18 F. Supp. 3d at 337 (alteration in original) (quoting Zinermon v. Burch, 494 U.S. 113, 126 (1990)).

The Supreme Court has distinguished between academic disputes and disciplinary proceedings in deciding the amount of process a student is due under the Fourteenth Amendment. In Goss v. Lopez, the Court held that in disciplinary proceedings a student must "be given oral or written notice of the charges against him and, if he denies them, an explanation of the evidence the authorities have and an opportunity to present his side of the story." 419 U.S. at 581.  By contrast, the Court "has been clear that there is no mandatory set of formal procedures required for challenging academic decisions."  Marino, 18 F. Supp. 3d at 337 (citing Bd. of Curators of the Univ. of Mo. v. Horowitz, 435 U.S. 78, 89-90 (1978)).

At its core, the Complaint describes an academic dispute.  Plaintiff alleges that Rogers-Sirin illegitimately "worsened his grade" from an A to an A-.  (Compl. ¶¶ 30-31.)  As a result, Plaintiff appealed his grade to the Committee, which ultimately declined to change his grade.  (Id. ¶¶ 32-36.)  Defendants are therefore held to "'far less stringent procedural requirements' . . . than

9

those called for in [a] disciplinary dismissal." Dean v. Univ. at Buffalo Sch. of Med. & Biomedical Scis., 804 F.3d 178, 192 (2d Cir. 2015) (quoting Horowitz, 435 U.S. at 86).

Plaintiff claims that Defendants "denied him any sort of fact-finding or hearing" and he "was not allowed to challenge the allegations against him." (Compl. ¶ 45.[4])  But it is well established that even a student facing academic dismissal "is not entitled to a hearing or to cross-examine witnesses." Sutton v. Stony Brook Univ., No. 18-cv-7434 (JS) (ARL), 2020 WL 6532937, at *17 (E.D.N.Y. Nov. 5, 2020) (citation omitted).  And other allegations make clear that he did have the opportunity to challenge his grade.  Because Plaintiff was dissatisfied with his grade, he appealed to the independent Committee.  Importantly, the Second Circuit has held appeal is not required to afford due process for academic disputes.  Id. (citing Dean, 804 F.3d at 193). Plaintiff was questioned about his participation in class and absences, and he does not allege he was prevented from answering those questions.  (Compl. ¶¶ 33-36.)  Even if Plaintiff disagreed with the Committee's conclusion or their interpretation of certain facts, he "was given a full and fair opportunity to be heard before impartial adjudicators." Marino, 18 F. Supp. 3d at 338 (finding no procedural due process violation where the plaintiff received two formalized proceedings before appellate committees specializing in grade challenges).

Plaintiff suggests that although the Committee was staffed by Psychology Department faculty and did not include the defendants, "it was clear that Defendant Melendez had spoken to" Committee members, implying that Melendez may have influenced their decision.  (Compl. ¶ 33.) To the extent Melendez provided information about an incident in which Plaintiff was allegedly involved that had to do with his class participation, it was potentially relevant to the Committee's grade appeal decision.  In any event, "there is no mandatory set of formal procedures required for

---

[4] I refer here to the paragraph 45 on page 10 of the Complaint.

challenging academic decisions," Marino, 18 F. Supp. 3d at 337 (citing Horowitz, 435 U.S. at 89-90), and Plaintiff does not explain why the Committee speaking to a program director with knowledge of the circumstances constitutes a deprivation of due process.  Plaintiff's procedural due process claim is dismissed.

### B.  Substantive Due Process

Plaintiff also arguably attempts to bring a substantive due process claim by challenging (1) the reasons for Rogers-Sirin's lowering of his grade and (2) faculty and peers' alleged branding of Plaintiff as a racist.  "'The doctrine of substantive due process protects the individual against certain government actions regardless of the fairness of the procedures used to implement them,' . . . but the scope of the doctrine 'is very limited.'"  Walter v. Queens Coll., 390 F. Supp. 3d 382, 391 (E.D.N.Y. 2019) (citations omitted).  To state a substantive due process claim, a plaintiff must allege governmental conduct that is "so outrageous, that it may fairly be said to shock the contemporary conscience."  Hurd v. Fredenburgh, 984 F.3d 1075, 1087 (2d Cir. 2021).

In the context of academic decisions, a plaintiff must show such "a substantial departure from accepted academic norms as to demonstrate that the person or committee responsible did not actually exercise professional judgment."  Wolff v. State Univ. of N.Y., 678 F. App'x 4, 5 (2d Cir. 2017) (summary order) (quoting Regents of Univ. of Mich. v. Ewing, 474 U.S. 214, 225 (1985)).  This standard reflects the judgment that courts "should show great respect for the faculty's professional judgment."  Ewing, 474 U.S. at 225.  The deference given to academic institutions is amplified at the highest levels of education as the "instruction becomes both more individualized and more specialized."  Marino, 18 F. Supp. 3d at 337-38 (quoting Horowitz, 435 U.S. at 90).

The thrust of Plaintiffs' Complaint is that he was denied the grade to which he was entitled by the Individual Defendants, who were prejudiced against him because he reported another

student.  (See, e.g., Compl. ¶¶ 11, 14-15, 23, 25, 27, 29, 30-31.)  Affording Rogers-Sirin the appropriate deference, the lowering of Plaintiff's grade from an A to an A- due to "participation" does not rise to the level of a constitutional harm.  Plaintiff also cannot state a substantive due process claim based on the Individual Defendants' alleged harassment of Plaintiff or their failure to prevent his peers from bullying or harassing him.  Plaintiff alleges he was branded a racist after reporting a classmate and, although "Defendant Melendez promised Plaintiff that the situation would be handled . . . nothing happened."  (Id. ¶ 14.)  Melendez allegedly called Plaintiff and "expressed regret for Plaintiff's experience" with "the rumors of racism," but also wanted to discuss with him whether he held racial animus or prejudices. (Id. ¶ 24.)  Plaintiff also alleges that Melendez brought up to the class a separate Zoom incident that had occurred in Rogers-Sirin's class, and that Plaintiff "felt uncomfortable."  (Id. ¶¶ 19-20.)  Melendez allowed the class to verbally attack Plaintiff for over an hour until another student stepped in.  (Id. ¶ 23.)  Finally, Plaintiff alleges that during an internship needed to complete the CSI program, his supervisor— who was a former student of Melendez—reported Plaintiff's "mistakes" to Melendez at her request.  (Id. ¶¶ 37-38.)  "As a result of this unfair and inappropriate treatment, Plaintiff dreaded going to the internship."  (Id. ¶ 40.)

Taking the above allegations as true, the Individual Defendants' conduct is not so egregious or conscience shocking as to violate substantive due process.  See County of Sacramento v. Lewis, 523 U.S. 833, 846-47 (1998) (describing substantive due process standard and caselaw).  Acting with "mere negligence" is insufficient.  Grune v. Rodriguez, 176 F.3d 27, 33 (2d Cir. 1999) (citing Daniels v. Williams, 474 U.S. 327, 328 (1986)).  Although Plaintiff may have reasonably felt uncomfortable with the Individual Defendants' treatment of him or believed that they could have done more to end harassment by other students, their conduct does not implicate the safeguards of

substantive due process.  The Second Circuit has held that a wide range of poor behavior by school officials—even instances of physical assault—does not rise to the level of a constitutional harm. See, e.g., Smith ex rel. Smith v. Half Hollow Hills Cent. Sch. Dist., 298 F.3d 168, 170, 173 (2d Cir. 2002) (affirming the district court's dismissal of the plaintiff's substantive due process claim based on allegations that a seventh-grader's teacher had "slapped [him] in the face at full-force with an open hand, allegedly causing [him] both great physical pain and severe emotional pain for which he underwent psychotherapy"); Yap v. Oceanside Union Free Sch. Dist., 303 F. Supp. 2d 284, 297 (E.D.N.Y. 2004) (finding that allegations of racist statements made by school staff to a student were insufficient to raise a substantive due process claim).  Similarly, courts have held that a teacher's general failure to prevent or adequately respond to bullying by other students does not violate substantive due process.  See, e.g., Smith v. Guilford Bd. of Educ., 226 F. App'x 58, 62 (2d Cir. 2007) (summary order) (holding that defendants' "failure to respond to the harassing and bullying to which [the student] was subjected . . . , while highly unfortunate, does not rise to the level of egregious conduct . . . so brutal and offensive to human dignity as to shock the conscience").  Accordingly, Plaintiff's substantive due process claim is dismissed.

### C.  Qualified Immunity

Because Plaintiff does not adequately allege any constitutional claims, I need not determine whether the Individual Defendants are entitled to invoke the defense of qualified immunity.  See Mara v. Rilling, 921 F.3d 48, 68 (2d Cir. 2019) ("[A] defendant has no need for an immunity shield where there is no viable constitutional claim.").

## III.    State Law Claims

Absent any federal claim, I conclude that there is no justification for retaining jurisdiction over Plaintiff's remaining state claims for breach of contract, negligence, negligent hiring and supervision, negligent infliction of emotional distress, and slander. (See Compl. ¶¶ 47-82.) In determining whether to exercise supplemental jurisdiction, I consider "judicial economy, convenience, fairness, and comity." Catzin v. Thank You & Good Luck Corp., 899 F.3d 77, 81 (2d Cir. 2018). These factors all counsel against retaining jurisdiction where all federal claims have been "eliminated in the early stages of litigation," Klein & Co. Futures, Inc. v. Bd. of Trade of City of N.Y., 464 F.3d 255, 262 (2d Cir. 2006), and Plaintiff can bring his state claims in state court. Accordingly, Plaintiff's state law claims are dismissed without prejudice.

### CONCLUSION

For these reasons, Defendants' motion to dismiss is GRANTED.

SO ORDERED.

Dated: February 2/ , 2023
Brooklyn, New York

s/Carol Bagley Amon
Carol Bagley Amon
United States District Judge

14